IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JOHNSON,     *

    Plaintiff,     *

                                                    Civil Action No. GLR-19-995

v.     *

OFFICER MOMODU GONDO, et al.,     *

    Defendants.     *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Jemell Rayam's Motion to Dismiss Complaint (ECF No. 19); Defendant Momodu Gondo's Motion to Dismiss (ECF No. 22); and Defendants Baltimore City Police Department, Mayor & City Council of Baltimore, and former Baltimore City Police Commissioners Anthony W. Batts and Frederick H. Bealefeld, III's (collectively, the "City") Motion to Dismiss (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part Rayam and Gondo's Motions and deny the City's Motion.

### I.     BACKGROUND[1]

On August 27, 2014, Defendants Gondo and Rayam, then members of the Baltimore

---

[1] Unless otherwise noted, the Court takes the following facts from Johnson's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). To the extent the Court discusses facts that Johnson does not allege in his Complaint, they are uncontroverted, and the Court views them in the light most favorable to the non-moving party. Additional facts will be discussed where relevant to the analysis.

City Police Department's ("BPD") Gun Trace Task Force ("GTTF"), stopped the car in which Plaintiff Robert Johnson was a passenger. (Compl. ¶¶ 93–94, ECF No. 1). Johnson alleges that the traffic stop was not supported by probable cause. (Id. ¶ 93). Gondo and Rayam ordered Johnson and the driver, Jeffrey Simmons, out of the car and searched them before searching the car. (Id. ¶¶ 94–95). Johnson alleges that Gondo and Rayam falsely asserted that they found a firearm inside the car. (Id. ¶¶ 95–96). Johnson and Simmons were arrested and charged with firearm offenses. (Id. ¶ 97).

At the time of his arrest, Johnson was on probation in an unrelated case, and this new arrest constituted a violation of his probation. (Id. ¶ 98). Johnson alleges that he was "pressured" into accepting a plea agreement "due to the collateral consequences of the potential probation violation." (Id. ¶ 99). "Under duress" and "with the assurance" that Gondo and Rayam would testify against him, Johnson pled guilty on November 18, 2014 and was sentenced to five years of incarceration. (Id. ¶ 100; Rayam Mot. Dismiss Compl. ["Rayam Mot. Dismiss"] ¶ 11, ECF No. 19-1). Johnson remained incarcerated for four years. (Compl. ¶ 101).

On February 23, 2017, Rayam and other GTTF members were indicted under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for, among other things, falsifying arrest reports and stealing narcotics seized during traffic stops. (Id. ¶ 58). Rayam pled guilty to conspiracy, admitting that he stole money from citizens he detained and arrested, sometimes sharing the proceeds with other GTTF officers, including Gondo. (Id. ¶ 57).

On December 18, 2017, Johnson and the State's Attorney's Office for Baltimore

City moved to withdraw Johnson's guilty plea. (See Rayam Mot. Dismiss Ex. C ["Joint Mot. Withdraw Guilty Plea"], ECF No. 19-4).[2] The Circuit Court for Baltimore City, Maryland granted the motion on January 26, 2018. (See Rayam Mot. Dismiss Ex. D ["Order Granting Joint Mot."], ECF No. 19-5).

On April 2, 2019, Johnson filed this lawsuit, seeking monetary damages. (ECF No. 1). As to former officers Gondo and Rayam, the Complaint alleges: false arrest (Count I); false imprisonment (Count II); intentional infliction of emotional distress ("IIED") (Count III); violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count IV); and violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count V). (Compl. ¶¶ 105–129). Against the City, the Complaint alleges negligent supervision, training, retention, and custom or policy of deliberate interference (Count VI).[3] (Id. ¶¶ 130–138).

On July 15, 2019, Gondo and Rayam each filed a Motion to Dismiss. (ECF Nos. 19,

---

[2] The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion without converting it to a motion for summary judgment. Fed.R.Civ.P. 12(d); see also Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. Of relevance here is the exception allowing the Court to consider matters of public record, including state court records. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Wittholn v. Fed. Ins. Co., 164 F.App'x 395, 397 (4th Cir. 2006) (per curiam) (concluding that state court records are public records of which a federal district court may take judicial notice).

[3] Contrary to the City's assertion, Johnson has not failed to allege any causes of action against BPD. Although BPD is not identified among the Defendants, immediately underneath Count VI's heading, Johnson concludes all of his causes of action with a paragraph stating that he brings this action against BPD and the other named Defendants. Moreover, Johnson's Complaint levies allegations against BPD pertaining to its supervision and training of officers and alleged condonation of officers' misconduct. (See, e.g., Compl. ¶¶ 68–81).

3

22). The City filed its Motion to Dismiss on July 16, 2019. (ECF No. 23). On August 28, 2019, Johnson filed Oppositions to each Motion to Dismiss. (ECF Nos. 26, 27, 28). On September 11, 2019, Gondo and Rayam each filed a Reply. (ECF Nos. 31, 32). The City filed its Reply on September 18, 2019. (ECF No. 33).

## II. DISCUSSION

### A. Fourth and Fourteenth Amendment Claims

Before addressing the substance of the parties' motions, the Court finds it helpful to identify how Johnson's Fourth and Fourteenth Amendment claims for false arrest and imprisonment will be addressed based upon the United States Supreme Court's ruling in Manuel v. City of Joliet, Illinois, 137 S.Ct. 911 (2017).

Claims brought pursuant to 42 U.S.C. § 1983 alleging fabrication of evidence may rely upon either the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment. The question before the Manuel Court was whether the Fourth Amendment governed claims for pretrial detention after the time that detention became "pursuant to legal process." 137 S.Ct. at 916. In answering that question in the affirmative, the Court engaged in an analysis of the respective roles of the Fourth and Fourteenth Amendments in § 1983 claims for wrongful detention. Id. at 917–18. The Court ultimately concluded that the Fourth Amendment governs claims of pretrial detention both before and after a judge's probable-cause determination. Id. at 918. In contrast, "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." Id. at 920 n.8

4

With this framework in mind, Johnson's detention between his August 27, 2014 arrest and November 18, 2014 guilty plea will be analyzed under the Fourth Amendment, and his period of incarceration beginning on November 18, 2014 will be analyzed under the Fourteenth Amendment.

**B.      Statute of Limitations**[4]

Johnson alleges false arrest and pretrial detention under the Fourth Amendment, Article 24 of the Maryland Declaration of Rights, and common law; illegal search and seizure in violation of Article 26; and IIED. All of these claims are time-barred.

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. See, e.g., Filarsky v. Delia, 566 U.S. 377 (2012). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Section 1983 does not have an express statute of limitations, so to determine whether a § 1983 claim has been timely filed, federal courts borrow from the most

---

[4] The defense of limitations is ordinarily not considered in the context of a motion to dismiss. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." Miller v. Pac. Shore Funding, 224 F.Supp. 2d 977, 985 (D.Md. 2002), aff'd, 92 F.App'x 933 (4th Cir. 2004).

analogous state law cause of action. Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 388 (4th Cir. 2014). In Maryland, tort claims for false arrest and false imprisonment are governed by a three-year statute of limitation. Gray v. Maryland, 228 F.Supp.2d 628, 635 (D.Md. 2002).

Federal law controls the accrual date on which limitations start to run, which turns on common-law principles. Id. at 389. "'Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action' against a defendant—that is, when the plaintiff knows or has reason to know of his injury." Id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)). The statute of limitations for § 1983 claims "seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Kato, 549 U.S. at 397.

In Johnson's criminal case, the District Court for Baltimore City, Maryland made a probable cause determination on August 28, 2014 and bound the case over for trial. (See Gondo Mot. Dismiss Ex. 1 ["State Ct. Dockets"] at 3, ECF No. 22-2).[5] Johnson was held without bond pending trial. Id. On November 5, 2014, Johnson was arraigned in Circuit Court and later pled guilty on November 18, 2014. Id. at 5. Thus, Johnson's Fourth Amendment claim accrued, at the earliest, on August 28, 2014 and, at the absolute latest, on November 18, 2014. Under the most generous calculation, Johnson's claim became time-barred by November 18, 2017. Accordingly, his Complaint, filed April 2, 2019, is

---

[5] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

untimely. Johnson attempts to invoke the discovery rule to avoid dismissal. The Court is not persuaded.

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., 731 F.Supp.2d 443, 449 (D.Md. 2010) (citing Lumsden v. Design Tech Builders, Inc., 749 A.2d 796, 801 (2000)), aff'd, 495 F.App'x 350 (4th Cir. 2012). However, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff but may be satisfied if the plaintiff is on 'inquiry notice.'" Dual Inc. v. Lockheed Martin Corp., 857 A.2d 1095, 1104 (Md. 2004). A plaintiff is on inquiry notice when the plaintiff "possesses facts sufficient to cause a reasonable person to investigate further" such that a "diligent investigation" would have revealed his victimization under the alleged tort. Id. (internal quotes and citations omitted). The Maryland Court of Appeals has held that the discovery rule is applicable generally in all actions. See Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981).

Here, Johnson claims that he could not have known of the fabrication at the time of his arrest because he was neither the owner nor driver of the car, and he was ordered out of the car before Gondo and Rayam searched it. Johnson asserts that the statute of limitations is thus tolled until March 2017, when he learned of the GTTF officers' RICO indictment. However, Johnson's Complaint contradicts this argument.

First, the Complaint alleges that, after searching the car, "Officers Gondo and Rayam falsely asserted that they found a firearm inside the vehicle and arrested both Mr. Johnson and Mr. Simmons," (Compl. ¶ 96), which implies that Johnson was aware of the

7

falsification at the time of his arrest. This implication is further supported by Johnson's assertion, in relation to his IIED claim, that "Defendant Officers caused Mr. Johnson to experience hysteria and fright when they told blatant lies to frame Mr. Johnson causing him emotional distress of a severe nature." (Id. ¶ 119). If Johnson was unaware of the fabrication until March 2017 and was released from custody less than a year later, it is unclear how or why he would have experienced "hysteria and fright" or emotional distress at the time of his arrest. The more plausible inference is that Johnson knew about the alleged fabrication at the time of his arrest and suffered emotional distress as a result.

Second, Johnson's Complaint alleges facts that should have, at a minimum, put him on "inquiry notice" at the time of his arrest that he may have a cause of action against Gondo and Rayam. To that point, Johnson alleges that the traffic stop was not supported by probable cause—a fact that, if true, not only supports a separate constitutional violation, but also undermines Johnson's assertion that he was unaware that he may have a cause of action against BPD.

Third, Johnson's Complaint alleges how pervasive and publicized BPD officers' misconduct was in the years preceding, and month immediately following, Johnson's arrest. For example, the Complaint alleges that in January 2006, the Baltimore Sun published an article on BPD's "Flex Squads," reporting that "'[d]efense attorneys, prosecutors and <u>community members say they have heard for years about allegations of misconduct</u> that included planted drugs and troublesome practices about how suspects were treated and charged.'" (Compl. ¶ 22) (emphasis added). The article continued: "'[P]revious allegations against certain officers have been made as to the planting of controlled

dangerous substances on citizens in an effort to knowingly make false arrests.'" (Id.). The Complaint further asserts that in September 2006, the Associated Press reported that "'dozens of criminal cases have been thrown out because of misconduct allegations against the specialized unit, allegations that have led the department to reassign all seven of the unit's members to desk jobs.'" (Id. ¶ 34). In September 2014, just one month after Johnson's arrest, the Baltimore Sun published another investigative article, revealing that "'[o]fficers in the [Violent Crimes Impact Sections] were accused by prosecutors of lying on a search warrant'" and that "'[m]any lawsuits against the City stemmed from the now disbarred VCIS." (Id. ¶ 37). Given Johnson's allegations that BPD's specialized units have been subject to public scrutiny both before and immediately after his arrest, the Court finds it difficult to conclude that Johnson would have been unaware, until March 2017, of a potential claim against BPD stemming from his arrest.

In sum, Johnson's April 2, 2019 Complaint, filed almost five years after his arrest, is untimely and cannot be saved by the discovery rule. Johnson's common law claim for false arrest (Count I); common law false imprisonment claim (Count II); IIED claim (Count III); illegal search and seizure claims under Article 26 of the Maryland Declaration of Rights and false imprisonment and unlawful seizure claims under Article 24 (Count IV) are also subject to a three-year statute of limitations and must be dismissed for the reasons stated above. See Barnhill v. Strong, No. CIV. JFM 07-1678, 2008 WL 544835, at *2 (D.Md. Feb. 25, 2008) (explaining that state causes of action for false arrest, false imprisonment, and unlawful search and seizure, filed pursuant to the Maryland Declaration of Rights and those filed pursuant to the common law, are subject to a three-year statute of

limitations).

Next, the Court considers the sufficiency of Johnson's § 1983 claims for fabrication of evidence under the Fourteenth Amendment and for negligent supervision, training, retention and custom or policy of deliberate indifference.[6]

## C. Failure to State a Claim

### 1. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6] It is undisputed that Johnson's fabrication of evidence claim under the Fourteenth Amendment is not time-barred. The three-year statute of limitations for § 1983 fabrication claims begins to run when the criminal proceedings against the accused terminates in his favor. See McDonough v. Smith, 139 S.Ct. 2149, 2161 (2019). Here, Johnson's criminal case terminated in his favor on January 26, 2018 when the Circuit Court granted Johnson's motion to withdraw his guilty plea.

10

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Analysis

Police officers violate due process when they fabricate or falsify evidence that is used to secure a defendant's conviction. Burgess v. Balt. Police Dep't, 300 F.Supp.3d 696, 707 (D.Md. 2018), appeal dismissed sub nom. Burgess v. Goldstein, 763 F.App'x 301 (4th Cir. 2019). To establish a § 1983 claim for fabrication of evidence, a plaintiff must show that "(1) the defendants fabricated evidence, and (2) the fabrication 'resulted in a deprivation of [the plaintiff's] liberty.'" Martin v. Conner, 882 F.Supp.2d 820, 847 (D.Md. 2012) (quoting Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005)). As the United States Court of Appeals for the Fourth Circuit explained in Massey v. Ojaniit, "[f]abrication

11

of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication." 759 F.3d 343, 354 (4th Cir. 2014) (citing Washington, 407 F.3d at 282–83). The causation element requires that the deprivation of liberty "'was a reasonably foreseeable result of [the defendants'] initial act of fabrication.'" Martin, 882 F.Supp.2d at 847. Further, § 1983 fabrication claims, "'like their common law brethren, require a demonstration of both but-for and proximate causation.'" Massey, 759 F.3d at 354 (quoting Evans v. Chalmers, 703 F.3d 636, 347 (4th Cir. 2012)).

Defendants argue that Johnson's conviction and subsequent incarceration resulted from his guilty plea, not from the introduction of fabricated evidence at a trial. For his part, Johnson relies upon United States v. Fisher, 711 F.3d 460 (4th Cir. 2013), in support of his claim that Gondo and Rayam's fabrication was the "but for" and "proximate cause" of his deprivation of liberty.

In Fisher, a BPD officer applied for a search warrant for Fisher's house and car, falsely averring in the affidavit that a confidential information told him that Fisher owned a gun and distributed drugs from his house and car. 711 F.3d at 462–63. When the warrants were executed, the officer found narcotics and a firearm, and Fisher subsequently pled guilty to the firearm offense. Id. at 463. The officer was later indicted and admitted to falsifying the affidavit he submitted in connection with Fisher's case. Id. Fisher moved to vacate his guilty plea, but the United States District Court for the District of Maryland denied the motion, concluding that despite the officer's misconduct, Fisher pled guilty and there was no indication that the prosecution was aware of the fabrication. Id. at 463–64.

12

The Fourth Circuit reversed, concluding that "[g]iven the totality of the circumstances of this case—a law enforcement officer intentionally lying in an affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found—[d]efendant's plea was involuntary and violated his due process rights." Id. at 469.

Johnson argues that, as in Fisher, his guilty plea was involuntary because it was offered in response to a criminal prosecution that would not have been initiated but for Gondo and Rayam's fabrication. Johnson further argues that because his guilty plea was involuntary, it does not break the causation chain.

The Court concludes that, at this stage, there is insufficient evidence in the record to assess the voluntariness of Johnson's guilty plea in his underlying criminal case. A record must be developed through discovery as to whether Gondo and Rayam are entitled to summary judgment on this claim.[7] Thus, the Motion is denied as to Johnson's § 1983 claim for fabrication of evidence under the Fourteenth Amendment.

Because Johnson may have a viable Fourteenth Amendment claim for fabrication, the Court will also deny the City's Motion as to Johnson's Monell claims for negligent supervision, training, retention and custom or policy of deliberate indifference.[8] See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); Robertson v.

---

[7] For example, there is no evidence in the record of a specific ground for the vacation of the guilty plea, a transcript of the proceeding, whether Johnson admitted possession of a firearm or merely affirmed that there was sufficient evidence to establish his guilt, and/or whether Gondo or Rayam admitted to planting the firearm.

[8] For this same reason, the Court will not reach Baltimore's immunity argument.

13

Prince George's Cty, 215 F.Supp.2d 664, 665 (D.Md. 2002) (reiterating that a "municipality cannot be liable under Monell, unless the plaintiff can establish that an individual employee of the municipality has committed a constitutional violation").

### III.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Rayam's Motion to Dismiss Complaint (ECF No. 19) and Gondo's Motion to Dismiss (ECF No. 22). The Court will grant the Motions as to Counts I, II, III, and IV, and deny the Motions as to Count V, as it relates to Johnson's § 1983 claim under the Fourteenth Amendment for fabrication of evidence. Additionally, the Court will deny the City's Motion to Dismiss for Failure to State a Claim (ECF No. 23) and deny the City's Motion to Dismiss (ECF No. 20), which was filed in error, as moot. A separate Order follows.

Entered this 31st day of March, 2020.

/s/<br>
George L. Russell, III<br>
United States District Judge